## DAVIS et al. v. CAPITOL PHOSPHATE CO.

(Circuit Court of Appeals, Fifth Circuit. June 20, 1893.)

### No. 151.

PUBLIC LANDS — RAILROAD GRANTS — INDEMNITY SELECTIONS — WHEN TITLE PASSES.

Under Act Cong. May 17, 1856, (11 Stat. 15,) granting certain lands to the state of Florida in aid of railway construction, and providing that if, when the routes of the railroad were definitely fixed, the United States had sold any of the granted sections, or the right of pre-emption had attached thereto, an agent or agents appointed by the governor might select other land in lieu thereof within prescribed limits, subject to the approval of the secretary of the interior, the state acquired no title to lands so selected by the agent until the approval of such selection by the secretary of the interior. Wisconsin Cent. R. Co. v. Price Co., 10 Sup. Ct. Rep. 341, 133 U. S. 496, followed.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. Bill for an injunction by John L. Davis and George L. Eastman against the Capitol Phosphate Company. From an order dissolving a temporary injunction and dismissing the bill, complainants appeal. Affirmed.

Statement by LOCKE, District Judge:

This was an action brought in the circuit court of Marion county, Fla., by a bill praying an injunction to restrain defendant from mining phosphates and cutting timber upon the south half of section 25, township 14 S., range 19 E., of that state. The bill alleged the complainants to be owners in fee simple of the land, and in possession of it. A temporary injunction was granted by the state court, but upon application•of defendant the case was removed to the United States circuit court, as one involving the validity of

the laws of the United States. Upon a hearing upon a motion to dissolve the injunction, the several deeds of conveyance upon which the complainants based their title, and exhibits and affidavits in behalf of the respondent, were filed, whereupon it was ordered that the injunction be dissolved, and the bill dismissed. From this order an appeal was taken, assigning as error that the court erred in holding that the claim of defendant under mineral rights was superior to the rights of complainants under the grant of land by the act of congress of May 17, 1856, and in dissolving the injunction and dismissing complainants' bill. It appears from the several exhibits herein that complainants claim under mesne conveyances from the Florida Railroad Company through several parties, the title of that company coming, it is claimed, through the act of congress of May 17, 1856, granting certain lands to the states of Florida and Alabama for the purpose of aiding in the construction of certain railroads. 11 Stat. 15. The language of that act is, as far as necessary for the purposes herein: "Be it enacted * * * that there be and is hereby granted to the state of Florida for the purpose of aiding in the construction of railroads from St. John river at Jacksonville to the waters of Escambia bay, at or near Pensacola; and from Amelia island on the Atlantic to the waters of Tampa bay, with a branch to Cedar Keys on the Gulf of Mexico, and also a railroad from Pensacola to the state line of Alabama, in the direction of Montgomery, every alternate section of land designated by odd numbers for six sections in width on each side of each of said roads and branch. But in case it shall appear that the United States have, when the lines or routes of said roads are definitely fixed, sold any section or any parts thereof granted as aforesaid or that the right of pre-emption has attached to the same then it shall be lawful for any agent or agents to be appointed by the governor of said state to select, subject to the approval of the secretary of the interior, from the lands of the United States nearest to the tiers of sections above specified so much land in alternate sections or parts of sections, as shall be equal to such lands as the United States have sold, or otherwise appropriated or to which the rights of pre-emption have attached as aforesaid; which lands (thus selected in lieu of those sold and to which pre-emption rights have attached as aforesaid, together with the sections and parts of sections, designated in odd numbers as aforesaid and appropriated as aforesaid) shall be held by the state of Florida for the use and purpose aforesaid: provided, that the land to be so located shall in no case be further than fifteen miles from the lines of said railroads and branch, and selected for and on account of each of said roads and branch."

W. S. Bullock, for appellants.

Robert M. Smith, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) It is admitted that the state by proper legislation conveyed any rights which had been derived from the congressional grant to the railroad company. The bill of complainants must depend upon the validity of their title from the railroad company, and not the weakness of the defendant's; so, if their title is not well founded, it will not be necessary to make further examination of the case. It is shown by the certificates of the receiver of the United States land office for that district and of the commissioner of the general office herein filed that the land in question is embraced in the 15-miles indemnity limits, which had been withdrawn from entry and sale by direction of the secretary of the interior March 16, 1881, and had been selected as such indemnity lands April 5, 1887, but that there had been no action of the general land office or secretary of the inte-

rior in confirmation of the selection or looking to its approval or rejection.

The principal question in this case, then, and that which must first be determined, is, what rights ·were given under the act of congress to the state, and by the state to the railroad company, to lands not within the 6-mile grant, but within the 15-mile indemnity limit, by selection as indemnity lands, but before the approval of such selection ,by the secretary of the interior?     This exact question was before the supreme court in the case of Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. Rep. 341.     In that case· a portion of the lands in question were within the limits of the positive grant, 10 sections on each side of the road, and a portion within the so-called "indemnity limits" of 20 miles.     The language of the grant under which those lands were claimed, the act of 5th of May, 1864, (13 Stat. 66,) was, as far as any question herein, exactly similar to the act of 1856, relied upon by complainants.     It; provides:

"That there be granted to the state of Wisconsin for the purpose of aiding in the construction of a railroad * * * every alternate section of public land designated by odd numbers for ten sections in width·on each side of said road. * * * But in case it shall appear that the United States have, when the line or route of said road is definitely fixed, reserved or otherwise disposed of, any sections or parts thereof, granted as aforesaid or that the right of pre-emption or homestead has attached to the same then it shall be lawful for any agent or agents of said state appointed by the governor thereof to select, subject to the approval of the secretary of the interior, from the lands of the United States nearest to the tiers of the sections above specified as much public land in alternate sections as shall be equal to such lands as the United States have sold or otherwise appropriated, * * * provided, that the lands to be so located shall in no case be further than twenty miles from the line of said road."

A list of the selections of the lands within the indemnity limits —20 miles—had been made, properly authenticated, and forwarded to the secretary of the interior, but he had not approved the same when the question arose.

In that case, Justice Field, speaking for the court, says:

"The lands taxed amounted to eleven parcels of 40 acres each, lying within the original sections named in the grant,—that is, within the ten-mile limit from the line of the road,—and the remainder were within the indemnity limits. So far as the eleven parcels are concerned, the right of the plaintiff to them, and to a patent for them, had as early as 1877 become complete under the term of the granting act. The line of the railroad had been definitely fixed. * * * The grant was, * * * until such location, a float. But when the route of the road was definitely fixed, the sections granted became susceptible of identification, and the title attached to them, and took effect as of the date of the grant, so as to cut off all intervening claims. * * * But as to the remainder of the lands taxed, which fell·within the indemnity limit, the case is different. For such lands no title could pass to the company not only until the selections were made by the agents of the states appointed by the governor, but until such selections were approved by the secretary of the interior. The agent of the state made the selections, and they had been properly authenticated and forwarded to the secretary of the interior; but that officer never approved them. * * * The approval of the secretary· was essential to the efficacy of the selections, and to give to the company any title to the lands selected. His action in that matter was not ministerial, but judicial. * * * Until the selections were approved, there were

no selections in fact; **only preliminary proceedings taken for** that purpose; and the indemnity lands remained **unaffected in their** title. Until then the lands which might be taken as indemnity **were incapable of** indentification; the proposed selection remained the property of the United States. The government was indeed under a promise to give the company indemnity lands in lieu of what might be lost by the causes mentioned, but such promise passed no title, and until it was executed created no legal interest which could be enforced in the courts."

In this case the court had been considering both the legal and equitable title of the land in question, and the decision plainly denies any title that can be enforced. This, we consider, fully determines the insufficiency of the title of complainants to support the action brought, and it is unnecessary for us to examine the numerous other questions presented and argued.

The judgment below is affirmed, with costs.